UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

STATE FARM MUTUAL
AUTOMOBILE INSURANCE
COMPANY, as Subrogee of Hsimin
Huang,

CASE NO. 08-12402

HON. MARIANNE O. BATTANI

               Plaintiff,

v.

BMW OF NORTH AMERICA, LLC,

               Defendant.
_____/

**OPINION AND ORDER DENYING DEFENDANT'S MOTION
FOR SUMMARY JUDGMENT OR IN THE ALTERNATIVE, FOR
SPOLIATION SANCTIONS AGAINST PLAINTIFF**

Before the Court is Defendant BMW of North America LLC, 's ("BMW") Motion for Summary Judgment or in the Alternative, for Spoliation Sanctions Against Plaintiff (Doc. No. 22). The Court heard oral argument on Defendant's motion on March 20, 2009, and at the conclusion of the hearing, the Court took the matter under advisement. For the reasons that follow, the Court DENIES Defendant's motion.

**I. STATEMENT OF FACTS**

Plaintiff State Farm, as Subrogee of Hsimin Huang, brings this automotive product liability action arising out of September 12, 2005, fire involving Huang's 2001 BMW X5. The vehicle burst into burst into flames while parked in the garage. This is the second lawsuit arising out of the incident; Plaintiff first filed suit against Harold Ziegler Lincoln Mercury, alleging that the dealership's repair of the vertical steering column motor caused

1

electrical faulting and started the vehicle fire. The case was dismissed on April 14, 2008, and State Farm filed suit against BMW the same day. Plaintiff asserts claims of negligence and breach of warranty, and violations of the Michigan Consumer Protection Act (MCPA), MICH. COMP. L. § 445.904(1(a).

Within days of the fire, on September 15, 2005, Plaintiff wrote to BMW, about the occurrence. The letter informs BMW that "State Farm would like to give [it] an opportunity to inspect the vehicle and give [it] advance notice of [Plaintiff's] potential subrogation claim." Def.'s Ex. E. State Farm's claim representative, Dave Kuenzel, subsequently wrote to Defendant, providing additional information. He informed BMW of the location of the vehicle, that State Farm wished an expeditious investigation, that it retained a company to perform an Origin and Cause investigation, and offered Defendant the opportunity to inspect the evidence in its unspoiled condition. Id.

On October 4, 2005, the representatives of all concerned parties performed a joint inspection of the vehicle at the scene of the fire. BMW sent Michael Donahoe and Louis Gahagan to inspected the vehicle. According to Plaintiff, Defendant paid for the services of an origin and cause expert as well as an engineer.

In the Engineering Report prepared by Plaintiff's expert, Michael McGuire, he concludes that "[t]he physical evidence available at this time indicates that the fire was caused by a wiring fault near the steering column." Pl.'s Ex. 4, p. 3. He adds,

> Given the fact that the fire originated in the area of the steering column, then there must be an electrical failure that occurred within that area of origin. In this case, the only evidence of electrical failure found on the vehicle was the arcing damage on the ignition switch wiring harness. Part of the wiring was melted away. There was discrete beading at the severed end of the conductor. That is the type of damage that would be caused by a wiring fault. A wiring fault in that area could easily ignite the plastic shroud that

covers the steering column, in addition to burning the insulation on the wiring. The evidence found in this case is consistent with a wiring fault on that ignition switch. That is the most likely cause of the fire.

Id. at 4. His report continues:

The only additional electrical failure that needs to be considered is a failure of the ignition switch itself. An ignition switch is nothing more than an electrical switch with a set of contacts and wiring connections. Wiring connections and contacts can fail in a way that will release sufficient energy to ignite combustible materials. The same combustible materials were available for the ignition switch to ignite. However, the ignition switch was not found after the fire. Therefore, there is no direct physical evidence to indicate that a failure occurred at the ignition switch.

Id., p. 5. He asserts in his affidavit that "there is direct physical evidence to indicate that there was a wiring fault of the ignition switch wiring." Pl.'s Ex. 11.

At his deposition, McGuire clarified his use of the word fault as meaning a short circuit or a ground fault, something that results in arcing which produces enough heat to start a fire. Pl.'s Ex. 5 at 34. He added that it is not a normal condition on a vehicle and it is not supposed to happen. Id. He conceded that failure of parts can occur for reasons other than a defect, for example, faulty service work. Id. at 35.

In its Complaint, Plaintiff alleges, among other things, that Defendant was negligent in failing "to properly manufacture and sell the vehicle so as to protect against foreseeable and unreasonable risks of damage," failing to warn of the hazards of the vehicle, and for manufacturing and supplying a vehicle that could fail. Pl.'s Ex. 2. In Count II, Plaintiff alleges that Defendant "warranted expressly and impliedly that the vehicle was safe and fit for the purposes and uses reasonably foreseeable and intended when it left Defendant's control, but contrary to said warranties, said vehicle was not reasonably fit for the purposes and uses reasonably foreseeable, but was defective." Pl.'s Ex. 2. In Count III, Plaintiff

alleges that Defendant violated the Michigan Consumer Protection Act (MCPA) because it represented that the vehicle had characteristics, uses, and benefits it did not have and misrepresented the quality of the vehicle.

## II. STANDARD OF REVIEW

Pursuant to Rule 56(c), a motion for summary judgment is to be granted only if the evidence indicates that no genuine issue of material fact exists. FED. R. CIV. P. 56(c). To avoid summary judgment, the opposing party must have set out sufficient evidence in the record to allow a reasonable jury to find for him at trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574 (1986).

The sufficiency of the evidence is to be tested against the substantive standard of proof that would control at trial. Anderson, 477 U.S. 242. The moving party has the burden of showing that there is an absence of evidence to support the non-moving party's case. Celotex v. Catrett, 477 U.S. 317, 325 (1986). "[A] party opposing a properly supported motion for summary judgment may not rest on mere allegations or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial." Anderson, 477 U.S. at 256. In disposing of a motion for summary judgment, this Court must consider the evidence in the light most favorable to the nonmoving party, but may weigh competing inferences for their persuasiveness. Matsushita, 475 U.S. at 574.

## III. ANALYSIS

Defendant asserts that it is entitled to summary judgment under any theory supporting a product liability claim. Because this matter is here on diversity of citizenship, Michigan law applies. Erie R.R. v. Tompkins, 304 U.S. 64 (1938), Micro-Electronic Corp. v. Bamberger's, 434 F.Supp. 168, 169 (1977). In addition to challenging Plaintiff's claims

on the merits, BMW asserts that Plaintiff's failure to preserve the vehicle and its components deprives it of its ability to inspect or test any of the alleged defective components. It requests dismissal as a sanction. The Court addresses the arguments below.

### A. Liability of a non-manufacturer

There is no dispute that Defendant did not design, manufacture, or assemble the 2001 BMW X5. Defendant concludes that its status relieves it of potential liability.

This Court rejects this position. BMW has conceded that it is the importer, distributor, and marketer of BMW products in the United States. See Def.'s Ex. C., p. 3. Michigan courts have generally held that motor vehicle designers, manufacturers and distributors owe a duty to users or occupants to eliminate any unreasonable risk of foreseeable injury. Auto Club Ins. Assoc. v. GM, 552 N.W.2d 523, 527 (Mich. Ct. App. 1996) (citing Snider v. Bob Thibodeau Ford, Inc., 202 N.W.2d 727, 730 (Mich. Ct. App. 1972). Accordingly, Plaintiff's ability to succeed on its claim, is not precluded by the fact that Defendant did not manufacture or sell the vehicle. Instead it claims that Defendant was unreasonable in marketing and distributing a motor vehicle that presented a foreseeable and unreasonable risk of damage. Therefore, the Court denies summary judgment on this claim.

### B. TESTIMONY OF PLAINTIFF'S EXPERTS

In the alternative, Defendant argues that Plaintiff cannot prove that the vehicle was defective inasmuch as its electrical expert, Michael McGuire, acknowledged that there were other possible causes for the wiring fault. In light of governing case law, the Court finds

McGuire's concession is not fatal to Plaintiff's claim.

Michigan law require dismissal of a claim unless the theory is based wholly in conjecture. See Holloway v. Gen. Motors Corp. (On Rehearing), 271 N.W.2d 777, 780 (Mich. 1978) (observing that under certain circumstances, the existence of a defective condition may be inferred from circumstantial evidence). Moreover, State Farm is not required to show that the fire "could only be attributable to a manufacturing defect or 'of effectively eliminating any other factors or circumstances which could have been responsible for the failure.' It was enough that it indicated a logical sequence of cause and effect." Schedlbauer v. Chris-Craft Corp., 160 N.W.2d 889, 891 n.1 (Mich. 1968).

Here, Plaintiff has no direct evidence that the ignition switch was defective because it was destroyed by the fire. Nevertheless, there is evidence that the ignition switch wiring had not been replaced or altered as well as evidence that the fire originated in the ignition switch wiring. Although Plaintiff's experts acknowledge that they cannot determine exactly what happened, there is testimony that the most likely cause of the fire was a wiring fault on the ignition switch. His testimony is consistent with the testimony of the cause and origin expert. Consequently, Plaintiff is entitled to have the trier of fact draw reasonable inferences better supported upon one side than the other.

Defendant has not sufficiently undermined the relevant testimony. Nor has Defendant developed facts showing a contrary theory such as the accidents, the repairs to the steering column, or misuse by the owners, caused the fire.[1] The dealership that

---

[1]The Huangs were the third owners of the vehicle. Def.'s Ex. D. They purchased the vehicle used with over 42,000 miles. It had been involved in two accidents: a frontal impact on March 11, 2002, and a right side impact on January 18, 2005. Id.

6

performed maintenance on the vehicle was exonerated of liability and there is no evidence regarding the likelihood of the accidents or misuse caused the fire to occur. Therefore, the Court denies summary judgment on this ground.

### C. BREACH OF IMPLIED WARRANTY

To succeed on a claim for breach of implied warranty, a plaintiff "must show that the defendant supplied a product that was defective and that the defect caused the injury." MASB-SEG Property/Casualty Pool v. Metalux, 586 N.W.2d 549, 552 (Mich. Ct. App. 1998) (citing Mulholland v. DEC Int'l Corp., 443 N.W.2d 340 (Mich. 1989)); Auto Club Ins. Ass'n v. General Motors Corp., 552 N.W.2d 523 (Mich. Ct. App. 1996).  Moreover, "[i]mplied warranty claims do not require the plaintiff to specify the type of defect alleged: the mere showing that something went wrong consistent with the existence of a defect is sufficient." Sundberg v. Keller Ladder, No. 00-10117, 2001 WL 1397290, at *6 (E.D.Mich. Nov. 8, 2001) (Lawson, J.) (citing Michigan cases). In Sundberg, the court observed that in an implied warranty action, "[b]ecause the defect can remain unspecified. . .circumstantial evidence alone can provide a sufficient link between the presence of a likely defect and an injury caused." Id. at *7 (citations omitted).

Despite Defendant's assertion that Plaintiff lacks evidence to establish the genuine issue of a material fact that the vehicle was defective or as to causation, there is circumstantial evidence of a defect. "Where a failure is caused by a defect in a relatively inaccessible part integral to the structure of the automobile not generally required to be repaired, replaced or maintained, it may be reasonable, absent misuse, to infer that the defect is attributable to the manufacturer." Halloway, 271 N.W. 2d at 782. When viewing the facts in the light most favorable to Plaintiff, the evidence creates a genuine issue of

material fact exists as to whether the vehicle supplied by BMW was defective. The Court denies summary judgment on this ground and reviews the evidence relative to causation.

Although the condition of the vehicle could have been altogether different at the time of the incident compared to the time of manufacture due to age or superseding conditions, Defendant offers mere supposition. Such speculation does not constitute evidence sufficient to undermine, as a matter of law, testimony offered by Plaintiff that the vehicle was the origin and cause of the fire and that the most likely reason the vehicle caught fire was a wiring fault on the ignition switch. Plaintiff does not have to eliminate all possible causes of the accident. A plaintiff may meet his burden through direct or circumstantial evidence and "need not produce evidence that positively excludes every other possible cause." Vigilant Ins. Co. v. Central Tower, Inc., No. 2:99-CV-98, 2001 WL 822425 *3 (W.D. Mich. May 1, 2001) (citations omitted).

In sum, the Court finds that Plaintiff "produce[ed] evidence reasonably leading to the conclusion that the defendant has supplied [the allegedly defective] product. . ." Snider v. Bob Thibodeau Ford, Inc., 202 N.W.2d 7227, 730 (Mich. App. 1972).

### D. SANCTIONS

The central issue in this suit is whether the vehicle was defective, but the vehicle is no longer available. The title to the vehicle was relinquished to Auto Salvage Auction in May 2006, and the salvage was shipped to Lithuania. BMW maintains that it is prejudiced by Plaintiff's failure to preserve the vehicle or its components. It requests dismissal of Plaintiff's suit as a sanction.

Spoliation is the intentional destruction of evidence that is presumed to be

unfavorable to the party responsible for the destruction. U.S. v. Copeland, 321 F.3d 582 (6th Cir. 2003). Recently the Sixth Circuit has made clear that federal, not state law governing the application of sanctions. It noted in Adkins v. Wolever, 554 F.3d 650, 652 (6th Cir. 2009),

> In contrast to our persistent application of state law in this area, other circuits apply federal law for spoliation sanctions. See, e.g., Silvestri v. Gen. Motors Corp., 271 F.3d 583, 590 (4th Cir. 2001); Reilly v. Natwest Mkts. Group Inc., 181 F.3d 253, 267 (2d Cir. 1999); Glover v. BIC Corp., 6 F.3d 1318, 1329 (9th Cir. 1993). We believe that this is the correct view for two reasons. First, the authority to impose sanctions for spoliated evidence arises not from substantive law but, rather, "from a court's inherent power to control the judicial process." Silvestri, 271 F.3d at 590 (citing Chambers v. NASCO, Inc., 501 U.S. 32, 45-46, 111 S.Ct. 2123, 115 L.Ed.2d 27 (1991)). Second, a spoliation ruling is evidentiary in nature and federal courts generally apply their own evidentiary rules in both federal question and diversity matters. King v. Ill. Cent. R.R., 337 F.3d 550, 556 (5th Cir. 2003). These reasons persuade us now to acknowledge the district court's broad discretion in crafting a proper sanction for spoliation.

In crafting a sanction, the court is guided by both fairness and punitive considerations. Id. Therefore, State Farm's failure to produce the vehicle must be assessed "along a continuum of fault-ranging from innocence through the degrees of negligence to intentionality." Id.

In rendering its decision, the Court first considers the import of the loss of the vehicle as evidence in this case. Here, the relevant part was burned to the point that the experts who did examine the vehicle could not offer any specific testimony other than where the fire started. Moreover, other circumstances weigh against BMW's request for dismissal as a sanction. Notably, Plaintiff invited BMW to inspect the vehicle, and BMW sent two representatives to the inspection. This fact minimizes BMW's complaint that it did not receive a report from either representative and that neither representative was an electrical

engineer. The decision as to the type of experts to send was in BMW's hands, not Plaintiff's. Moreover, Plaintiff attempted to retrieve the evidence. In sum, there is no evidence that the loss of the car relates to intentional misconduct. Accordingly, the Court declines to dismiss Plaintiff's lawsuit in this ground.

In the alternative, BMW asks for an adverse inference instruction. The Court denies the request without prejudice. BMW is free to raise this request at the appropriate time.

### E. MICHIGAN CONSUMER PROTECTION ACT

Defendant maintains that Plaintiff's claim must be dismissed for three reasons: it made no oral representations to the purchasers upon which a claim under the MCPA could be based; the MCPA does not apply; and the claim fails to comply with Rule 9(b), which requires a party to plead fraud with particularity. Before turning to the specific arguments raised by Defendant, the Court notes that the MCPA prohibits deceptive, unfair, and unconscionable trade practices that cause loss to consumers. MICH. COMP. L. § 445.903. It is a remedial statute and as such, it must be broadly construed. Price v. Long Realty Co., 502 N.W.2d 337 (Mich. Ct. App. 1993).

#### 1. Oral representations

In Mikos v. Chrysler Corp., 404 N.W.2d 783, 784 (Mich. Ct. App. 1987), the appellate court clarified that a breach of an implied warranty constitutes a violation of the MCPA. The court noted that an implied warranty was a benefit promised by law, and from the consumer's standpoint "it is just as much a promised benefit as if the merchant itself made the promise." Id. The court further reasoned that the term "promised benefit" is ambiguous in that it does not indicate who promised the benefit and explicitly rejected the

assumption that the benefit must be promised by the merchant.

BMW asserts that as an importer, distributor, and marketer, it has made no oral representation to the Huangs. These assertion is immaterial because there is no requirement of privity for an implied warranty claim. Pack v. Damon Corp., 434 F.3d 810(6th Cir. 2006) (concluding that Michigan has abandoned the privity requirement for implied-warranty claims).

Moreover, the language in the statute itself undermines Defendant's position. The MCPA broadly prohibits the use of "unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce." MICH. COMP. L. § 445.903(1). It defines the term "trade or commerce" as "the conduct of a business providing goods, property, or services primarily for personal, family, or household purposes and includes the advertising, solicitation, offering for sale or rent, sale, lease, or distribution of a service or property, tangible or intangible, real, personal, or mixed, or any other article, or a business opportunity." MICH. COMP. L. § 445.902(d). The intent of the act is "to protect consumers in their purchases of goods which are primarily used for personal, family or household purposes." Noggles v Battle Creek Wrecking, Inc., 395 N.W.2d 322 (Mich. Ct. App. 1986). Given the statutory language encompassing distribution and the remedial reach of the statute, this Court finds summary judgment unwarranted on this ground. See also Janda v. Riley-Meggs Industries, Inc., 764 F. Supp. 1223, 1231 (E.D. Mich. 1991) (allowing an orthopedic surgeon who had conducted a study of the use of breakaway softball and baseball bases to bring an action under the MCPA against the manufacturer and distributor of a detachable base).

**2. Applicability**

11

Next, BMW argues that the pervasive regulatory scheme of the National Highways Traffic Safety Administration (NHTSA) precludes this claim. The Act does not apply to a "transaction or conduct specifically authorized under laws administered by a regulatory board or officer acting under statutory authority of this state or of the United States." MICH. COMP. L. § 445.904(a). In Smith v. Globe Life Ins. Co., 597 N.W.2d 28, 39 (Mich. 1999), the Michigan Supreme Court noted, that when "determining whether a transaction or conduct is "specifically authorized" by law, "the relevant inquiry is not whether the specific misconduct alleged by the plaintiffs is 'specifically authorized.' Rather, it is whether the general transaction is specifically authorized by law, regardless of whether the specific misconduct alleged is prohibited." Id.

The Court finds BMW's position unavailing. First, Defendant has not asserted that NHTSA regulates warranties. Second, Michigan courts have found automobile dealers liable under the MCPA. See Tembarius v. Slatkin, 403 N.W.2d 821 (Mich. Ct. App. 1986), King v. Taylor Chrysler-Plymouth, Inc., 457 N.W.2d 42 (Mich. Ct. App.1990). Although these decision do not discuss exemption from the MCPA as an industry regulated by NHTSA, in Tornow v. Stanford Bros., Inc., No. 03-785 NZ, 2005 WL 4135450 (Mich. Ct. App. April 21, 2005), the court rejected a similar argument based on the state Motor Vehicle Code. In sum, the Court finds BMW has failed to meet its burden to show Plaintiff's claim is barred by § 445.904(a) of the MCPA.

### 3. Pleading requirements

Finally, BMW argues that the Court should dismiss the claim because Plaintiff's did

12

not comply with the special pleadings requirements of FED. R. CIV. P. 9.  Specifically, Rule 9(b) requires a party to "state with particularity the circumstances constituting fraud or mistake."  FED. R. CIV. P. 9(b).

State Farm has not brought a claim of fraud.  BMW's contention that Rule 9(b) requires the MCPA claim be pleaded with particularity is contrary to case law.  See Michels v. Monaco Coach Corp., 298 F. Supp.2d 642 (E.D. Mich. 2003) (rejecting this argument and holding that a claim based on a manufacturer's breach of warranties was not premised on fraud).  Accordingly, the Court denies summary judgment on this ground.

## IV.  CONCLUSION

For the reasons stated above, the motion is **DENIED**.

**IT IS SO ORDERED.**


          s/Marianne O. Battani
          MARIANNE O. BATTANI
          UNITED STATES DISTRICT JUDGE


Date: August 7, 2009


## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or e-filed to counsel of record on this date.

          s/Bernadette M. Thebolt
          Deputy Clerk